May it please the Court, my name is Warrington Parker. I represent both defendants at Oral Argument on Appeal. This is a case involving a securities fraud matter. It's a case involving overseas investments. We know all about this. Great. Tell us what happened. What happened is twofold. I think it was, let me start with I think what is one of the sharpest issues. Of course, the argument is presented that Judge Real intervened in this case inappropriately. Did so weighing in favor of the government in almost every instance. The clearest example, one that is virtually undebatable, is when he cut off cross-examination and prevented Mr. Hall's counsel from cross-examining a witness at all. That is the sharpest example of where there is error in the case. Listen, you know, you make very good arguments in your briefs, which we're totally aware of. So why don't we hear from the government? Very good. Thank you, Your Honor. May it please the Court, my name is Ellen Meltzer. I represent the Justice Department in this matter. The government would like to address the two issues that Mr. Yes. Where is the trial lawyer? Another attorney from Washington, D.C. He's present in the courtroom, Your Honor. Okay. How come he's not arguing this? Because I handle the appellate matters from our section. What did you say? I handle the appellate matters from the fraud section, Your Honor. Who is the trial lawyer for the government? I am, Your Honor. Okay, thank you. We have questions about the trial. We might want to address them to you. Yes, Your Honor. The government would like to address the two issues which Mr. Hall raised in his brief, and I'll be happy to answer any questions that the Court has about Mr. Sumaru's issue, namely that the Court admitted evidence of Mr. Sumaru's arrests and his conviction without the necessity for using certified records. Mike. Through this, it's really hard to conclude that these people would ever, you know, have a fair trial. That was my concern. You know it's a bad sign when the defense lawyer is asked to sit down and the government is brought out of turn. Yeah, it didn't make me real happy. And we can look at the specific issues piecemeal. But what struck me, and I'm a trial judge. My colleagues are former trial judges. And so you look at this, and for people who are dedicated to the proposition that a trial ought to be fair and ought to look fair and appear fair, this was a very troubling transcript to read. And you've got a serious headwind, it seems to me, in convincing us that this was a fair trial because it just doesn't look to be so. I appreciate that, Your Honor. The concern that I have, just to throw it out there as well, is that, you know, and this maybe is directed to the trial lawyer more, but I don't know what the government attorney is supposed to do in this circumstance. I mean, the government attorney wants to win, and so they're not going to object. Although I noticed that many times the government attorney didn't object to things and Judge Real objected to things. But the government attorney is in a very awkward position. But what do you suggest? How should, when the trial judge is being so one-sided and unfair, what should the government attorney do? I guess, first of all, it was not the government's view that this was entirely a one-sided trial. If I can address some specific issues, starting with the exclusion of the testimony. You're sailing against a strong headwind. I understand. There's really no doubt in my mind that these people, they could be rascals or whatever, didn't get a fair trial. That's what business we're in, to see that people get a fair trial. I understand, Your Honor, and the government wants them to have a fair trial also. But as far as the exclusion of the testimony of Mr. You can't take it piece by piece. You go through, I think you can find a hundred things that happened here that were outlawed. Did the trial attorney think, did the prosecutor think that this was a fair trial? Yes, Your Honor. Well. Yes, Your Honor. I believe that both trial attorneys did. Can he answer that for himself? Can I approach you, Your Honor? Yes, please. You can come up here without a coat, too. He didn't think he had to make an appearance. Good day, Your Honor. My name is Joel Leising. I was the trial attorney during this case, and I did feel that it was a fair trial. All right. So when all of Mr. Klein's testimony was excluded simply because the defense counsel had spoken to them outside the hall, did you think that was fair? Your Honor. We know that it's not misconduct. The defense counsel is allowed to talk to the witness. Well, that wasn't entirely clear, Your Honor, and I'm still not entirely sure of that, at least the appearance of propriety. In fact, before they did that, they asked me if I had any objection. I said, well, my practice always is that when a witness takes a stand, I never talk to them until the end of the trial. And so I said to them, that's my practice. I don't know what you're going to do, but I'm not going to consent to it, and you might want to check with the judge. You mean you never talk to a government witness before they take the stand? No, while they're on the stand, Your Honor, if it's been continued over for the next day or something. Uh-huh. Well, doesn't the defense have a right to interview witnesses if the witness is willing to talk to them? Well, clearly, they could have talked to them before the trial. In fact, Mr. Klein was a former personal assistant for one of the defendants, Mr. Sumru. And as he indicated during his testimony, a close friend. What's wrong if he talks to them during the trial if the witness wants to talk to them? Well, again, from my practices, I think it has the appearance of impropriety. Well, it has an appearance of impropriety if the government thwarts that. Why does it have an appearance of impropriety? Your Honor, I think it has the appearance of maybe coaching or trying to do something with their testimony. And I think that may have been what was in Judge Real's mind also, that they may have been trying to coach. You don't coach witnesses? We certainly interview the witnesses prior to trial, Your Honor. But once they take the stand, we don't, if they said something that maybe was unexpected, we don't call them to the side and say, hey, listen. You don't go out to lunch with them? No, Your Honor. And talk to them? Not while they're on the stand, no. You don't say to them when there's a recess, you know, you made this statement, and is that what you really meant to say? No, Your Honor, I wouldn't do that. The guy says, well, no, I didn't mean to say it. And then you'll try to rehabilitate him? No, I wouldn't. Is there a rule that you're familiar with that informs your practice? Because I'm familiar with people who have done that in the past. I'm familiar with far more who will ask questions and continue an inquiry over dinner or whatever while a witness is on the stand. I'm certainly aware of opposing counsel if they can ask a question and get a response. But I've never been aware, I don't think, of a rule of professional conduct. Well, you are. It may be appropriate, and I was in private practice before going to the Justice Department. In a civil case or something, it might be appropriate in that context. But in a criminal case, I still don't feel it's appropriate that once a witness takes a stand, unless his testimony is totally finished, he should not be talking. I don't think that's the practice in the Central District at all. And I was a district court judge on the Central District for almost three years. That was not the practice before it. If I might come in briefly. I did question the Central District about it. Who did you talk to in the Central District? The appellate chief. The criminal appellate chief. For? Criminal appeals. Oh, okay. So you talked to the U.S. attorneys in the Central District? Yes, Your Honor. I talked to the chief of appellate. And he said that it actually had come up shortly before I was writing my brief, and he said it generally is the practice in their office. He's only aware of one attorney who prosecutes cases who said that he does sometimes talk to witnesses once they've started testifying. If I might, and I realize my personal opinion doesn't really matter, but I started with the Justice Department in 1981, and I was taught from the very beginning exactly what Mr. Leising said, that once a witness starts testifying, you do not talk to them. And maybe that's just the practice of our office out of Washington, but that's what our attorneys do. So when that witness was excused, Mr. Leising, in all fairness, did not know that it should not have happened, that there was not an appropriate sanction. From our perspective, reading the transcript and having conducted trials, even if there was something that the defense counsel shouldn't have spoken, but I don't agree that that's the case. I think they're allowed to speak to them. I don't disagree, ma'am. Yeah, if the witness is willing. Because I don't think there's any rule that prohibits it. Correct. Assuming there was something wrong about it, certainly there are other sanctions before dismissing the witness and not even allowing them to testify at all in front of the jury. He certainly could have done that, but in terms of a different type of sanction. But in terms of them attempting to recall Mr. Klein and not presenting him to the court until after the record was closed, the court never prohibited them calling Mr. Klein as their own witness. And neither Mr. Sumeru's attorney nor Mr. Hall's attorney ever approached the government and let us know that they were having trouble contacting him. He was dismissed as a witness the morning of the 19th. There was court again on the 20th. We were never told on the 19th or the 20th before the record closed, and they certainly never informed the court that they were having problems trying to find him, that they wanted to recall him. Here's my concern about what went on. And it's why I suggested that we could look at any issue in isolation and maybe be persuaded that what happened really wasn't all that bad. But as a trial lawyer, when you get in a situation where a judge really doesn't like your case, first of all, it's a very awkward position for the government to be in, for that lawyer to know what to do, because when you see your opponent being shot up, you don't want to get in the line of fire. But when you're that lawyer, it makes it very difficult to make decisions that would be made otherwise and say, all right, this is a tactical way that we can defeat them. And I understand the defense in a criminal case, you're supposed to pull out all the stops and so forth, but you're an officer of the court, and you've got a judge that is setting a tone and tenor that tells you that you're not to go in a particular place, even though you know you need to and you're entitled to. It has a very chilling effect on the decisions that you make. And that's why I think, for me, I took two steps back, looked at the entire transcript and said, this just isn't right. It wasn't the way a trial in federal court should be conducted. I personally read the entire excerpts. I don't have the entire trial transcript. And then asked a law clerk to go through, and she found something like 98 instances of one-sided intervention by Judge Reel, which just seems to me to reek of unfairness. And it's really tragic, because there's a major prosecution, major fraud. But I'm reading all the trial transcript that I did. I have a pretty strong feeling about what I think happened here. But I think the government may have to redo it. We don't have any problem with the government attorney. I understand it wasn't our objections that precipitated this. I understand that. That's what I said. I said he was in a terrible spot. Yeah, a terrible spot. What's he supposed to do? What's the government supposed to do in this situation? Then, you know, say, oh, don't do that. Oh, that's not right. You know, whatever. And then, you're next. I appreciate what the court's saying. I've known Judge Reel for a long time. As a matter of fact, as a matter of public announcement, there's only one federal judge in America that's got more active time on the federal bench than me, and that's Judge Reel. And he's a wonderful person socially. I like to talk to him and all that, but I don't know what happens when he gets up on the bench. It all depends. I don't know. You know, it wasn't a fair trial, really. I guess there's not a lot I can do to convince you. If you want me to keep trying, I will. I want to make it clear, though, it's not, I mean, and maybe in our disposition we'll have to make this clear, we do not, I mean, I do not fault the government counsel. Nobody does. Because, you know, I don't know what you do in that position. You know, in these cases, what's the conviction rate in the Central District? No? It's probably 98%. Probably 100%, you know, most months. Well, now that we've got good public defenders, maybe it's 90%. But the government rarely, rarely, rarely loses cases because they're well-prepared. You've got the FBI and all the other powers of the Justice Department, law enforcement working on their side. So there's no need for all this. If I might just add, and I realize this is not going to save the case. We like you very much. Thank you. You're one for February so far. Thanks. The government also was interrupted by the judge. I realize certainly not to the extent that the defense was, but on about page two or three of our opening statement, our attorney, and it was not Mr. Leising, it was his co-counsel, was admonished by the judge. And, in fact, defense counsel, a couple of pages later, interrupted the government counsel, objected to something. The judge sustained it. It was not entirely a one-sided trial. And there were quite a few objections by defense counsel that also were sustained, and we were admonished during the trial. I wonder what the jury thinks when it sees something like this, though, and the impact of the judge's actions on the jury. I don't know. The judge did give the normal charge to the jury. The jury is always looking to try to figure out what the judge is thinking. They do that. I learned that when I used to try traffic tickets in the municipal court in 1965. And so you've got to be very careful as a judge not to signal any partiality. Otherwise, this is not going to be a fair trial. Thank you, Your Honor. Defense counsel did as well as they could, I have to say. I wasn't there. I appreciate it. Pass it on. Thank you. One other matter, if I may, that may be gilding the lily, and I understand it. Go ahead. Mr. Sumaru is in prison right now serving his sentence. If this court is going to reverse, I would ask that it keep that in mind. It may be that the government moves to detain him pending any retrial, but I think he should be allowed that opportunity to meet those additional procedural requirements and get out of prison pending a retrial, if that's appropriate. That's not up to us. What about Mr. Hall? Understood. It is up to this court, though, to understand that pending this decision. Mr. Hall. Mr. Hall is on a bail pending appeal. He's locked up. He's not. This court granted bond pending appeal for Mr. Hall. Correct. Mr. Sumaru has been detained since the indictment. I didn't hear that. And that may be appropriate still. Mr. Sumaru has been detained since the indictment. He's in jail. Yes. That's all right. I understand that's gilding the lily, perhaps, but I just wanted to raise that with the clerk. It's better for him to stay there because he gets out and, you know, when he's going to get convicted, he's got to go through that same adjustment period. Great. Thank you, Your Honors. Unless there are any questions. Thank you. And just, we'll probably send this to another judge. Thank you, Your Honor. Okay.
judges: Pregerson, Wardlaw, Leighton